**Brenda LEWELLING, Petitioner,**

v.

**Carl and Melba LEWELLING,
Respondents.**

**No. C–9104.**

Supreme Court of Texas.

Sept. 19, 1990.

Rehearing Overruled Oct. 10, 1990.

Sybil K. Colson, Paris, for petitioner.

J. Brad McCampbell, Emory, for respondents.

## OPINION

DOGGETT, Justice.

At issue in this cause is the standard to be applied when a nonparent seeks appointment as managing conservator of a minor child. The applicable provision of the Family Code requires the nonparent to show that awarding custody to the natural parent "would not be in the best interest of the child because it would significantly impair the child's physical health or emotional development." Tex.Fam.Code Ann. § 14.01(b) (Vernon Supp.1990). The court of appeals, while properly articulating this standard, failed to apply it correctly and, in so doing, improperly relied upon evidence of abuse of a mother by her spouse to deny her appointment as managing conservator of her child. 774 S.W.2d 801, 803 (1989). We, therefore, reverse the court of appeals' judgment and remand the cause to the trial court with instructions for rendition of judgment in accordance with this opinion.

Brenda Lewelling initiated a divorce from her husband Billy Lewelling and sought appointment as managing conservator of their son Jesse. She alleged that Billy had physically abused her throughout their relationship. Although Billy did not seek custody of the child, his parents, Carl and Melba Lewelling, intervened in the divorce proceeding to be named managing conservators. At the hearing on temporary custody, Brenda testified that Billy had often beaten her during their marriage, that she had been hospitalized on several occasions as a result, once with a concussion from a blow to the head, and that this physical abuse continued during the time she was pregnant with Jesse. The trial court awarded temporary custody to the Department of Human Services (DHS) with the right of placement. DHS opted to place the child with Brenda pending the outcome of the suit.

The trial court ordered DHS to investigate both Brenda and the Lewellings. At the final custody hearing, the social worker who visited Brenda recommended that Jesse be placed with her. The social worker who investigated Carl and Melba suggested that Jesse reside with them. During the proceedings, Brenda's allegation of physical abuse was bolstered by the testimony of Melba, as well as Billy's brother. There was no evidence to indicate that the child had been physically abused.

At the close of the hearing, the trial court ordered that Carl and Melba be named as managing conservators of Jesse. Brenda and Billy were named as possessory conservators. Although not referencing any specific evidence, the trial court concluded that naming Brenda as managing conservator would significantly impair Jesse's physical health and emotional development. The court of appeals affirmed the appointment of Carl and Melba as managing conservators based on the following evidence: 1) Brenda continued to see Billy after several incidents of physical abuse and testified that she might consider a reconciliation if he sought counseling; 2) Brenda continued to see Billy during the pendency of the divorce when he came to visit Jesse; 3) Brenda did not see Jesse for a period of approximately two months after Billy beat her and took Jesse to the grandparents' house; 4) Brenda was unemployed, had little money, and lived in a small house with her mother and other family members; and 5) Brenda had twice

been a patient at Terrell State Hospital. 774 S.W.2d 801, 803–804.

█ Brenda has presented a properly preserved "no evidence" point of error to this court. When reviewing such a challenge, we must consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the court's finding, disregarding all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In the instant case, we must determine whether more than a scintilla of evidence exists to support the trial court's finding that appointing Brenda as managing conservator would significantly impair Jesse's physical or emotional well being. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). If no evidence exists, we must sustain Brenda's point of error and reverse the judgment.

The presumption that the best interest of a child is served by awarding custody to a natural parent is deeply embedded in Texas law.[1] The Legislature, in enacting section 14.01(b), codified that presumption by defining the procedure for appointment of a nonparent as managing conservator. Prior to 1987, that statute provided in relevant part:

> § 14.01. Court Appointment of Managing Conservator
>
> (b) A parent shall be appointed managing conservator of the child unless the court finds that appointment of the parent would not be in the best interest of the child.

Tex.Fam.Code Ann. § 14.01(b) (Vernon 1986). Although the parental preference was clear, the strength of that presumption was not.[2]

In 1987, however, the legislature made clear the paramount importance of the parental presumption by amending the statute to provide:

> (b) A parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child unless:
>
> > (1) the court finds that appointment of the parent or parents would not be in the best interest of the child *because the appointment would significantly impair the child's physical health or emotional development;*

Tex.Fam.Code Ann. § 14.01(b) (Vernon Supp.1990) (emphasis supplied). While there is apparently no legislative history relevant to its intended effect, this amendment was viewed as a significant change greatly strengthening the parental presumption:

> Thus, *while there might be a lot of reasons appointment of a parent would not be in the best interest of the child, only one suffices to rebut the parental preference.* This means that the fact that another contesting third party, for example, a grandparent, would be a better custodian of a child is not sufficient to rebut the parental presumption absent this impairment of physical health or emotional development.

89–1 State Bar Section Report—Family Law 27 (J. Sampson ed. 1989) (emphasis supplied).[3]

---

1. *See, e.g., Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex.1963); *Legate v. Legate,* 87 Tex. 248, 28 S.W. 281, 282 (1894).

2. *See* 89–1 State Bar Section Report—Family Law 27 (J. Sampson ed. 1989) ("Until 1987 there was considerable doubt as to the exact strength of the parental preference stated in [section 14.01].... [T]he caselaw was somewhat mixed as to whether the parental preference was ... of constitutional dimension to be given great weight and 'one of the strongest presumptions known to law,' or whether it was little more than a tendency that could be avoided by introducing a mere scintilla of evidence going the other way.").

3. *See also* Wicoff, *Joint Managing Conservatorship* P–22, State Bar of Texas Advanced Family Law Course (1987) ("[T]he evidence will have to be rather strong in showing some type of past physical abuse or neglect. With regard to impairment of emotional development, it would seem that very strong psychological or psychiatric testimony would have to be offered as to the mental health of the parent [who is] being denied conservatorship."); Garcia & Orsinger, *Legislative Update* A–27, State Bar of Texas Advanced Family Law Course (1988) (referencing "stronger parental preference").

■ The amendatory language requiring a showing that appointment of the parent would significantly impair the child's physical or emotional development creates a strong presumption in favor of parental custody and imposes a heavy burden on a nonparent. It is no longer adequate to offer evidence that the nonparent would be a better custodian of the child. *See Mumma v. Aguirre*, 364 S.W.2d 220, 221 (Tex. 1963); *see also Neely v. Neely*, 698 S.W.2d 758, 760 (Tex.App.—Austin 1985, no writ). Under section 14.01 as amended, the nonparent must affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would *significantly impair* the child, either physically or emotionally. This statute thus requires the nonparent to offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child.

■ Since there is no evidence in the record to show that appointment of Brenda as managing conservator would significantly impair Jesse's physical health or emotional development, the court of appeals erred in affirming the trial court's award of permanent custody of the child to the grandparents. *See Mumma*, 364 S.W.2d at 221. The fact that Brenda was unemployed at the time of the custody hearing and living in somewhat crowded conditions is no evidence of significant impairment to the child.[4] The visits to Terrell State Hospital constitute no evidence that placement with Brenda would emotionally impair the child. Her testimony that she was released on the initial visit after being told she "didn't need to be down there" is uncontradicted in the record. Similarly, her uncontested testimony established that the second and last visit, initiated by her husband and father-in-law, resulted in her release by the hospital within twenty-four hours because she had no mental problems.[5]

■ Most importantly, the court of appeals seems to place great weight on the evidence relating to the alleged physical abuse of Brenda,[6] without any evidence that such abuse would significantly impair Jesse's physical health or emotional development. A parent should not be denied custody of a child based on the fact that he or she has been battered. We hold that evidence that a parent is a victim of spousal abuse, by itself, is no evidence that awarding custody to that parent would significantly impair the child. Any other result is contrary to the public policy of our State.

4. Justice Gonzalez twists our holding today as somehow barring trial courts from considering the failure of the natural parent to remove a child from an "unstable environment" in determining whether placement with the parent would substantially impair the child's physical health or emotional development. After giving as an example a "rat infested crack house with drug addict, partner swapping" inhabitants, 796 S.W.2d at 171 n. 4, he concludes that Brenda's residence at the time of trial was an "unstable environment." *Id.* at 171. This is an offensive mischaracterization of Brenda's living conditions. Clearly, the act of a parent in placing a child in an unstable environment is the very type of conduct that the Legislature contemplated would significantly impair the physical or emotional development of a child. Yet it is precisely the type of evidence that Justice Gonzalez chronicles that is patently absent from the record in this case.

5. Justice Gonzalez relies heavily on testimony of Brenda's brother, Fred Worley, concerning her emotional stability. His statements in the record relate largely to Brenda's admission to Terrell State Hospital and are so vague and conclusory as to constitute no evidence that placement of the child with Brenda would significantly impair Jesse's emotional development. It should also be noted that Fred's wife testified on Brenda's behalf at the temporary custody hearing, stating that Brenda was a good mother, that her house was clean and that she kept the children clean and well-fed.

6. This includes evidence that Brenda would return to her husband after being beaten by him, as well as the emotional complications inherent in such an abusive relationship. The characteristics exhibited by Brenda and cited by the court of appeals are symptoms of what has been termed the "battered woman syndrome." Victims of spousal abuse are often reluctant to terminate the abusive relationship because of an overwhelming feeling of helplessness and a low self-esteem. *See generally* Waits, *The Criminal Justice System's Response to Battering*, 60 Wash. L.Rev. 267, 272–294 (1985). A holding contrary to that which we reach today could only deter battered spouses from reporting their suffering lest they lose their children.

Our decision today is consistent with recent legislative changes addressing the problem of family violence. As part of the 1987 amendments to section 14.01, the Legislature added a provision specifically targeting the problem of family violence. Section 14.01(c)(2), which sets forth the factors to consider when the natural mother and father are both seeking custody, states that evidence of abusive physical force by a parent against his or her spouse or a child shall be considered by the court in deciding custody. The provision creates a preference that the non-violent parent, rather than the violent parent, be appointed managing conservator.[7] Thus, in a custody dispute between two parents, section 14.01(c)(2) allows evidence of spousal abuse to be considered only as a factor that weighs heavily against the abusive parent; such evidence does not weigh against the abused. As the abuser cannot take advantage of his acts of abuse in a custody battle with the abused, so the abuser's parents also may not benefit from that abuse. While expressing continued concern for the best interest of the child, the Legislature has also determined that removing a child from a parent simply because she has suffered physical abuse at the hands of her spouse is not in the best interest of our state.

While trial courts should be afforded broad discretion in deciding family law questions, the Legislature has explicitly limited the exercise of that discretion when a nonparent seeks appointment as managing conservator. Although the facts of this case present a "close call" to Justice Gonzalez, 796 S.W.2d at 172, the Legislature has mandated how close calls should be decided—in favor of the natural parent. As quarterbacks, Monday morning or otherwise, we are obligated to follow the decisions of the legislative referee. We cannot ignore the 1987 amendment and return to the less onerous best interest standard previously in effect. Rather than "judicially amending the statute," as Justice Gonzalez claims, 796 S.W.2d at 171,[8] we are adhering to our judicial function by enforcing the law as written.

Carl and Melba, as nonparents seeking custody, are required to identify some act or omission committed by Brenda which demonstrates that naming her as managing conservator will significantly impair Jesse's physical health or emotional development. They cannot benefit from the abuse endured by Brenda at the hands of their son by offering it as some evidence of significant impairment to their grandchild. We reverse the judgment of the court of appeals and remand to the trial court for rendition of judgment that the natural parent, Brenda, be named as managing conservator.[9] The trial court may find it neces-

---

7. Texas is one of several states that have enacted such statutory provisions favoring non-violent parents in custody determinations. *See* Note, *Domestic Violence and Custody Litigation,* 13 Hofstra L.Rev. 407, 425 (1985).

8. While this may not, as Justice Gonzalez indicates, 796 S.W.2d at 173, technically be a termination of parental rights action, it may have such an effect. Brenda lives with relatives in another county from her son and has no readily available transportation. Consequently, she is unlikely to be able, through the exercise of visitation rights, to have a substantial role in her child's upbringing. The only comfort Justice Gonzalez offers Brenda, however, is the possibility of petitioning the trial court for a change in custody and thus beginning anew her almost three-year effort to have her child returned to her. He further fails to note that the burden in such a proceeding would be on Brenda to prove that (1) the circumstances of the child, the grandparents or Brenda have materially and substantially changed since the date of the trial court's final order; *and* (2) retention of the grandparents as managing conservator would be injurious to the child's welfare; *and* (3) the appointment of Brenda would be a positive improvement for the child. Tex.Fam.Code Ann. § 14.08(c) (Vernon 1986 and Supp.1990).

9. Both Justices Hecht and Gonzalez in their dissents urge that remand is required because of the amount of time that the child has lived with his grandparents. The asserted basis for a remand is a judicially created one: the final custody hearing in this cause was held March 11, 1988, and the fact that Jesse has lived with his grandparents for such a lengthy period is largely attributable to delays in the appellate process. Directing a mother who has been deprived of her child for almost three years "to go and start over," 796 S.W.2d at 171 (Hecht, J., dissenting), is unconscionable, and compounds the error of the lower courts by further thwarting the legislatively-mandated parental preference.

sary to hold further hearings on matters relating to support of the child and visitation rights.[10]

Concurring opinion by COOK, J.

Dissenting opinion by GONZALEZ, J.

Dissenting opinion by HECHT, J., joined by SPEARS, J.

COOK, Justice, concurring.

I concur with the majority. I am, however, disturbed by the reasoning of my colleague and write separately to address those contentions.

Section 14.01(b) of the Texas Family Code was amended by the legislature in 1987. The legislature provided in the amendment that the only satisfactory reason to deny a parent appointment as a managing conservator is "because the appointment would significantly impair the child's physical health or emotional development." While there may be many reasons appointment of a parent would not be in the best interests of the child, the only one before us today sufficient to rebut the parental presumption is the one stated in the amendment. What this in effect means is that although another party, such as a grandparent, might be a better custodian of a child, this fact is not sufficient to rebut the parental presumption, absent the significant impairment of the child's physical health or emotional development.

The testimony clearly showed that Brenda Lewelling was a good mother. No one testified that she was in any way harmful to the child. The testimony was clear that she kept the child clean, neat, well fed, provided a clean and neat home, took the child to the doctor, and was fully capable of providing for him. Her testimony that she loved the child was demonstrated by her actions. This testimony came from numerous witnesses regarding the mother.

There is no evidence to rebut the parental presumption in favor of the mother.

The legislature, in passing the amendment to § 14.01(b), did not do so to simply add additional verbiage to the Family Code. It did so because it was establishing a bright line test to be used with respect to the parental presumption. In this particular case, that test has not been met.

The dissent correctly points out that trial courts are given wide latitude in family law cases. However, a clear standard as enunciated by the legislature cannot be ignored.

To support the action of the trial court my colleague emphasizes that Brenda's sister and her son live in the same household. He omits the lower court's statement that the child is retarded. I hope the day never comes when having a retarded child living in your home can be cited as a grounds for taking away custody of your child. The dissent also points out that Brenda was on medication for her nerves. If this is a valid reason to take away custody then, based upon the sales of valium and other tranquilizers, a large portion of America would lose their children in the event of a divorce.

My colleague, in support of taking away custody from the mother, cites the fact that her 73 year old mother who is in poor health, also lives in the home. If more children took a greater interest in their parents perhaps we could all hold our heads up higher.

Brenda was repeatedly beaten by her husband. The grandparents to whom custody was awarded could hear her scream in the night because of the proximity of the homes. They admit that they knew about the beatings by their son and that they saw the bruises on Brenda. The beatings of Brenda took place even during her pregnancy and she was often forced to flee for her life. Spousal abuse is one of the greatest tragedies in our society. The evidence also suggested that the son frequently

10. Contrary to the position of Justice Gonzalez, our action today does not condemn the child to the possibility of living in perpetual peril. If Brenda's living situation has changed for the worse, as in the exaggerated hypotheticals contrived by Justice Gonzalez, 796 S.W.2d at 173–174, there is nothing to prevent the grandparents from petitioning the court for a change in conservatorship. Tex.Fam.Code Ann. § 14.08 (Vernon 1986 and Supp.1990). The court may issue a temporary order changing the designation of managing conservator if there is a "serious, immediate question concerning the welfare of the child." *Id.* at § 14.08(g)(1).

lived with his parents. The effect of granting custody to the grandparents in this case may have the practical effect of granting custody to the father.

The dissent relies upon the fact that Brenda was admitted to a state mental hospital. In fact she was admitted on her own once for a period of two weeks for evaluation after which she was released. On the second time she was involuntarily admitted by her husband and father-in-law and held for only 24 hours. The severe beatings which lasted over a protracted period of time never prevented her from loving and caring for her child.

The dissent states that if the judgment of the court of appeals is affirmed, there is nothing to prevent Brenda from petitioning the trial court to change custody. This is a gross oversimplification of the Family Code. The dissent glosses over the fact that the burden on a modification of custody is completely different than the burden at the time of the divorce.

No parent should ever lose custody of their child simply because a retarded child lives in the home, they take care of an elder parent who is in poor health, or because they have been the subject of repeated beatings by their spouse. I concur in the majority opinion.

GONZALEZ, Justice, dissenting.

Even after the amendment to section 14.-01(b) of the Texas Family Code, the "best interest" of the child continues to be the paramount consideration in child custody cases. I would hold that the trial court's findings of fact are adequate for appellate review, that the presumption of parental preference over non-parents has been rebutted and that there is some evidence to support the discretion exercised by the trial court. Thus, I would affirm the judgment of the court of appeals.

The trial judge was faced with a Hobson's choice of deciding custody of a child between two parties that were far from ideal. The trial court chose the lesser of two evils and awarded custody to the grandparents. Instead of viewing the evidence in the light most favorable to the trial court, considering only the evidence and the inferences tending to support the findings, and disregarding all evidence and inferences to the contrary,[1] our court merely pays lip service to this standard and blindly awards custody of the child to the mother.

The best interest of the child is the paramount consideration in custody disputes. Texas Family Code § 14.07(a) provides that "[t]he best interest of the child *shall always* be the primary consideration of the court in determining questions of managing conservatorship, possession, and support of and access to the child." TEX.FAM. CODE ANN. § 14.07(a) (Vernon 1986) (emphasis added); *see also Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex.1963).

Section 14.01(b)(1) was amended in 1987 [2] to provide that a parent shall be appointed managing conservator unless it "would not be in the best interest of the child *because the appointment* would significantly impair the child's physical health or emotional

---

1. This is the proper standard of review in analyzing a "no evidence point." *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

2. Act of June 19, 1987, ch. 720, § 1, 1987 Tex. Gen.Laws 2595–96. The bill as it was passed by the House merely added that evidence of violence in the domestic setting be considered by the trial court in determining custody. It was amended during the floor debate to clarify that the statute applied only to evidence of "abusive" physical force. H.J. OF TEX, 70th Leg.Reg.Sess. 2462–63 (1987).

The Senate Committee on Jurisprudence amended the bill to include the "significantly impair" language. Senate Committee on Jurisprudence Committee Report, H.B. 614, 70th Leg. Reg.Sess. (May 27, 1987). This is the first time the bill contained this language. When the bill as amended was presented for a vote, it was described by the sponsor as merely requiring the trial court to consider evidence of domestic violence. There was absolutely no discussion concerning any change to the "best interest" of the child standard, no discussion that the parental presumption needed to be strengthened, nor any declaration of intent that this amendment apply to custody disputes between parents and non-parents. *See id.;* Debate on Tex.H.B. 614 on the Floor of the Senate, 70th Leg.Reg.Sess. (May 29, 1987) (tape available from Senate Staff Services Office).

development." This statute only reinforces what has been the law in Texas for 100 years. *See, e.g., Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976); *Herrera v. Herrera,* 409 S.W.2d 395, 396 (Tex.1966); *Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex.1963); *Taylor v. Meek,* 154 Tex. 305, 276 S.W.2d 787, 790 (1955); *Wicks v. Cox,* 146 Tex. 489, 208 S.W.2d 876, 879 (1948); *State ex rel. Wood v. Deaton,* 93 Tex. 243, 54 S.W. 901, 903 (1900); *Legate v. Legate,* 87 Tex. 248, 28 S.W. 281, 282 (1894); *Taylor v. Deseve,* 81 Tex. 246, 16 S.W. 1008, 1009 (1891). Thus, preference of parents over non-parents in child custody disputes was present in the jurisprudence of this state long before the amendment to section 14.01(b) of the Family Code.

The 1987 amendment allows rebuttal of the presumption with evidence that *placement* with the parent would have a detrimental effect on the child's physical or emotional well-being. The statute does not say, nor is there anything in the words chosen by the legislature or in the legislative history of the amendment to require, that the detriment must be due to an act or omission of the parent. The court today reads this requirement into the statute and, thus, has invaded the legislative function by judicially amending the statute.[3] Furthermore, the court holds that the protracted failure to remove the child from an unstable environment is not an omission that can be considered in determining the child's best interest. This could lead to absurd results. It is not difficult to imagine a parent in an environment, through no fault of his or her own, that would be intolerably dangerous to the child's physical or emotional health. Under the court's

new requirement, the child must remain exposed to the danger because it is not due to the act or omission of the parent.[4]

Furthermore, the legislature did not change the burden of proof of Family Code section 11.15[5] nor the public policy of this state expressed in section 14.07(a) that the best interest of the child is paramount in determining custody. Thus, rather than clarify the standard to be used when a non-parent is chosen over a parent in custody disputes, this opinion only muddies the water.

Even accepting the standard announced in today's opinion, the trial court's decision should not be disturbed. Trial courts are given wide latitude in determining the best interests of minor children and their judgments in this regard are reversed only when *it appears from the record as a whole* that the court has abused its discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982). The trial judge is in the best position to make these decisions. When faced with conflicting considerations the trial judge must be accorded the right to exercise a large measure of discretion. He or she has an opportunity that we do not have to observe and evaluate the parties and their witnesses, to weigh the credibility of their testimony, to weigh the evidence, draw inferences and make reasonable deductions from the evidence, to believe or disbelieve all or part of their testimony and to assess the physical and emotional needs of the child.

With this in mind, and viewing the evidence in the light most favorable to the trial court's determination, as we must, the record shows that:

---

**3.** Only when it is necessary to give effect to the clear legislative intent can we insert additional words into a statutory provision. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 552 (Tex. 1981). Here, the legislative intent is anything but clear as to whether the detriment to the child must be due to an act or omission of the parents.

**4.** For example, under the court's new requirement, if a parent chooses to live with his or her child in a rat infested crack house with drug addicts or partner swapping friends, but the parent does not use drugs, a trial court's place-

ment of the child with a non-parent would apparently be reversed by this court.

**5.** § 11.15. **Findings**
   (a) Except as provided by subsection (b) of this section, the court's findings shall be based on a preponderance of the evidence under rules generally applicable to civil cases.
   (b) In a suit in which termination of the parent-child relationship is sought, each finding required for termination of the parent-child relationship must be based on clear and convincing evidence.
   Tex.Fam.Code Ann. § 11.15(a), (b) (Vernon 1986).

1. At the time of the divorce, Brenda lived with her mother, her sister, and their respective families and she planned to continue this arrangement after the divorce.

2. Brenda's brother, a paramedic, testified that Brenda's home environment was unstable. Not only did Brenda have emotional problems but the other adults living in the same house did as well. Their seventy-three-year-old mother, who was in poor health, had been a patient at the state mental hospital on several occasions and was on thorazine. Brenda's sister and her sister's twenty-year-old son also lived in the same household along with Brenda's other child by a prior marriage. Brenda's sister was also on medication for her nerves. Brenda did not get along with her sister and, on one occasion, she was kicked out of the house by her sister.

3. Brenda was physically abused by her husband on numerous occasions. She would file charges against him but she would be back with him "before the ink even got dry on the papers."

4. Brenda was admitted to the state mental hospital.[6]

5. The child has lived with his paternal grandparents most of his life.

6. Brenda failed to undergo counseling with a trained psychologist as had been recommended by a social worker nor did she avail herself of opportunities for self-improvement such as job training and job counseling.[7]

The court today second guesses the trial court and concludes that there is no evidence to support the trial court's decision that placement of the child with his mother at the **time of the hearing** would have been detrimental to the child.[8] In my opinion, the above evidence is some evidence (more than a scintilla) which supports the trial judge's decision that continuous exposure of the child to the unstable environment in which Brenda found herself at the time of the trial would significantly impair the child's emotional health. In other words, none of these factors in and of themselves rebut the presumption of parental preference. But, from the totality of the circumstances, taking the record as a whole, the decision made by the trial judge is reasonable.

This is a close call,[9] one that the trial court did not make lightly and one that he

---

6. The court decides that these events are insignificant and completely ignores evidence favorable to the trial court. For example, the court brushes aside the paramedic brother's testimony that Brenda had emotional problems and testimony of the social worker who recommended that Brenda seek psychological counseling. It is obvious to me that the court is impermissibly reweighing the evidence and reaching a result it concludes that the trial judge should have reached.

7. The trial court heard other evidence, some of which was conflicting and other that was favorable to Brenda. For instance, Brenda's husband testified that he wanted the child placed with Brenda and not with his parents.

8. I agree with the court that a parent should not be denied custody of a child based on the fact that he or she has been battered. However, this has very little to do with this case. The trial court did not make a finding of fact to this effect, nor did it in any way indicate that this was a basis for its decision.

Also, if the judgment of the court of appeals is affirmed, there is nothing to prevent Brenda from petitioning the trial court to change custody.

9. When we first considered this case, the application for writ of error was denied. 33 Tex. Sup.Ct.J. 5 (Nov. 4, 1989). It was granted on rehearing. It would have been better if we had been patient and waited to interpret this statute until we received a case with more clear-cut facts. Instead, the court has rendered a "holding" (clearly dicta) that is inapplicable to the facts of this case. To support the holding, the court looks to section 14.01(c)(2) of the Texas Family Code. While I agree with the interpretation of 14.01(c)(2), it simply does not apply to the facts before us.

It is acknowledged by all that 14.01(c)(2) applies to custody disputes *between* parents. Nowhere does the literal text of the statute nor its legislative history indicate that the preference accorded to the non-violent spouse in a dispute between spouses shall, likewise, be accorded to the non-violent parent in a dispute between the parent and a non-parent. Certainly, evidence of spousal abuse should never weigh against a non-violent spouse in a custody dispute between spouses. However, a different situation is presented when the dispute is between the non-violent parent and a non-parent. There are numerous factual scenarios in which spousal abuse towards the non-violent parent should be

alone was empowered to make. After listening to conflicting evidence and observing the witnesses and weighing the credibility of their testimony, the trial judge awarded custody of the child to the grandparents. In my opinion, reasonable minds can differ as to whether or not he should have awarded custody to the grandparents or not. We ought not play Monday morning quarterbacks and second guess his decision unless it is clearly wrong and I do not think that it is. *See Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985) (when reviewing factual sufficiency of evidence, trial court's judgment will be reversed only if it is so contrary to overwhelming weight of evidence as to be clearly wrong and unjust).

I have other problems with the court's and Justice Cook's opinions. They unfairly imply that the trial judge made his decision because he was influenced by the relative wealth of the parties. This is simply not true. At the conclusion of the trial, the trial judge said:

> The court is in agreement with the argument that has been made that financial ability is not the determining factor. It never has been in this court and hopefully never will be regardless of who sits in this position.

Thus, poverty was not and should never be a factor in child custody cases and for my colleagues to imply that it was does a great disservice to this well respected trial judge.

Also, the court and Justice Hecht imply that the father of the child and his parents were in cahoots with each other to deprive Brenda of custody of the child. In fact, the record shows that not only was Brenda's husband *not* living with his parents during the temporary hearing or trial but that he was alienated from his parents. He testified that his parents had a drinking problem and that the court ought to award custody of the child to Brenda.

I also have a problem with the court seeming to equate *conservatorship and possession* of a child with *involuntary termination* of parental rights. There are inherent differences between the two and the court today glosses over these differences. Involuntary termination of parental rights is permanent and irreversible. Also, the parent-child relationship is one of constitutional dimensions and should be disturbed only for the most compelling and serious of reasons. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976). On the other hand, conservatorship is not permanent and irreversible and the non-custodial parent is usually, as in this case, given rights of visitation. One can petition the court to modify the order at any time. There is also a lesser burden or standard of proof.[10] The court today blurs this important distinction and treats this case as one involving severance of parental rights.

Today, the court reaches a decision which overlooks the **central issue** in child custody cases, the best interest of the child. The court addresses the interests of the mother and the paternal grandparents and determines that two-and-a-half years ago the trial court erred in awarding custody to the paternal grandparents since they could not point to any act or omission by the mother which would **significantly impair the child's physical health or emotional development.** Now, nine men in Austin blindly instruct the trial court to award custody to the mother without any consideration of the effect on this child's life. I submit that this does more damage to the child than anything that the trial court ever did. The court could achieve its objective in interpreting the amendments to the Family Code which reinforce the parental preference and, at the same time allow the trial court to reconsider custody at this point in time (two-and-a-half years since Jesse has been with his grandparents). Although the parties in interest here are the mother and the paternal grandparents, the

---

a factor to be considered by the trial court when that parent is in a custody dispute with a nonparent.

**10.** There is a "clear and convincing evidence" standard for termination of parental rights

cases and a "preponderance of the evidence" standard for custody cases. *See* TEX.FAM.CODE ANN. § 11.15(a), (b) (Vernon 1986).

real party in interest is the child. We should not act perfunctorily in carrying out our duties to interpret this statute without considering the impact of our decision on a young child who will be taken from the home he knows and placed with his mother when we do not have any information about her ability to care for him at this time.

Jesse is a three-and-a-half year old child who has lived most of his life with his grandparents. Although the mother was given liberal visitation rights, we do not know whether she has visited the child during the time this case has been on appeal or anything about her current situation. Conceivably, the grandmother is the only mother this child has ever known. For this child to now be jerked from familiar surroundings in response to an order of this court and be blindly handed over to a virtual stranger is not in the best interest of the child. In the interest of justice, we should remand this case to the trial court for reconsideration by the trial judge. By remanding the case, we permit the trial court to ascertain whether circumstances have changed while the case has been on appeal and whether there is a way to lessen the trauma to the child.

In conclusion, I am concerned that today's opinion will be misconstrued by the bench and bar. This opinion puts into question the continued validity of Family Code section 14.07(a)'s objective that the best interest of child is paramount. There is nothing in the amendment itself or in its legislative history to indicate that by amending section 14.01(b) of the Family Code (presumption of parental preference over non-parents) the *legislature* meant for children to be treated as prizes to be coveted and that trial courts should concern themselves more with the righteousness of claims to custody by parents, rather than the best interest of children. However, this is the message that this case conveys.

For all of these reasons, I cannot join in the court's opinion.

HECHT, Justice, dissenting.

I respectfully dissent. I agree with the Court that there is no evidence to support the trial court's decision to appoint the father's parents rather than the mother managing conservators of the child in this case. I fully recognize that in determining the best interest of a child the trial court must have broad discretion. Appellate courts must always recognize the advantage that the trial court has in actually having seen and heard the participants in a case. Nevertheless, the decision of the trial court, even in the most sensitive cases involving parental rights, is subject to appellate review. Consequently, the reasons for the trial court's decision must be articulated, or at least articulable, on the record. As the Court notes, neither the parties nor the court of appeals has been able to state why, on this record, appointing the mother as managing conservator would, in the words of the statute, "significantly impair the child's physical health or emotional development." Tex.Fam.Code § 14.01(b). Thus, while I have no doubt that the trial judge made what he considered to be the best decision in this difficult case, I agree with the Court that the record does not support that decision.

The Court holds that "evidence that a parent is a victim of spousal abuse, by itself, is no evidence that awarding custody to that parent would significantly impair the child." *Supra* at 167. I agree with this statement, but I am concerned that other, less precise language in the Court's opinion may cause confusion.[1] As the Court notes, battered spouses sometimes find it difficult, for a variety of reasons,[2] to

---

1. For example, the sentence immediately preceding the holding just quoted states: "A parent should not be denied custody of a child based on the fact that he or she has been battered." *Supra* at 167. I think the Court means, "based *solely* on the fact", but I am uncertain enough to feel constrained to add a few comments.

2. *See* Gelles, *Abused Wives: Why Do They Stay*, 38 J.Marr. & Fam. 658–59 (Nov. 1976), reprinted in B. Costa, Abuse of Women: Legislation, Reporting, and Prevention 13–28 (1983); M. Pagelow, Woman-Battering: Victims and Their Experiences 145–177 (1981); L. Walker, The Battered Woman (1979). Indeed, children and the ability to support them are often issues.

extricate themselves from abusive relationships. A parent who keeps a child in an abusive relationship subjects the child to the same abuse. If a parent would not or could not terminate an abusive relationship and continued to subject his or her child to the same threat of harm, the resulting impairment of the child's physical and emotional welfare might well warrant a change in managing conservatorship. Petitioner's counsel expressly conceded this proposition at oral argument but urged that there is no such evidence in this case. The evidence in this case is that Brenda has been physically abused by her former husband, that when she had left him in the past she had always returned, and that if he would submit to counseling she might return again. Although this evidence is certainly relevant in considering the child's welfare, I am unwilling to conclude that it is any evidence that Brenda's appointment as managing conservator will significantly impair her child's wellbeing. At best, it seems to me, the evidence establishes a potential threat to the child but not a significant impairment of his wellbeing. Moreover, the evidence is that Brenda's former husband has often stayed with his parents, whom the trial court appointed managing conservators. Leaving the child with his mother, who might return to his abusive father sometime, would hardly seem to expose the child to more risk than moving him to his father's parents, with whom his father also lives.

I disagree with the Court that judgment should be rendered appointing Brenda managing conservator of her child. As a rule, we should render judgment against a party who, like Carl and Melba Lewelling here, fails to offer evidence to meet his burden of proof. *See* TEX.R.APP.P. 180. We may, however, remand such a case to the trial court for further proceedings "if it shall appear that the justice of the cause demands". *Id.* The evidence reflects that the child in this case was born April 1987. Some four months later his parents separated, and two months after that Brenda filed for divorce. The trial court appointed the father's parents managing conservators of the child shortly before his first

birthday. Before then, the father's parents had kept the child on numerous occasions and for as long as two months at a time. Since then, I assume the child has remained in the possession of his grandparents. The child is now over three years old. I have no way of knowing what may have happened to the child or the parties in the two years that this case has been on appeal, and neither does the Court. Two years is a long time, particularly in the life of a child. Rather than render judgment blindly, I would remand this case to the trial court in the interest of justice for such further proceedings as may be appropriate, whether simply to render judgment appointing Brenda managing conservator, or to reopen the evidence in the child's interest. While I realize that a parent like Brenda, who also must endure the delay of appeal to vindicate her right to possession of her child, may feel she has won a pyrrhic victory if she is told merely to go back and start over, the focus must be on the best interest of the child, and the trial court remains in the best position to protect that interest.

SPEARS, J., joins in this dissenting opinion.