PENNY V. SMITH 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-263-CV





BILLY DALE PENNY FOR CHELSEA DIANE PENNY, A MINOR




 APPELLANT


vs.





DEBBIE SMITH,



 APPELLEE



 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL

DISTRICT


NO. JUV90-0241-C, HONORABLE DICK ALCALA, JUDGE PRESIDING



 




 This case involves a child-custody dispute between a child's father and maternal
grandmother. Debbie Smith, appellee and maternal grandmother of Chelsea Diane Penny,
brought a "suit affecting the parent-child relationship" against Billy Dale Penny, father of Chelsea
Diane Penny, in which Smith sought sole managing conservatorship of Chelsea. The cause was
tried to the court, which rendered a decree naming Smith as the sole managing conservator and
Penny as possessory conservator. Penny appeals to this Court, challenging Smith's standing to
bring the suit and the trial court's order naming Smith the sole managing conservator of the child. 
We will affirm the trial court's judgment.



FINDINGS OF FACT

 The trial court filed the following findings of fact, and Penny has not challenged
these findings on appeal:



 1. Petitioner [Debbie Smith] is the maternal grandmother of the child.


 2. The mother of the child died May 28, 1990 after the birth of the child. The
child was born May 8, 1990.


 3. Respondent [Billy Dale Penny], the father of the child, was 18 years of age
at the time of the filing of the petition.


 4. The paternal grandmother, who is not a party to this suit, took possession
of the child and has cared for the child in her home since the mother's
death.


 5. The Respondent father does not live in the home of his parents where the
child resides.


 6. The Respondent father has a history of violent behavior that was directed
toward or involved the child's mother, his father and other close
acquaintances. During one incident, he pulled a knife on a friend.


 7. The Respondent father has shown disrespect towards law enforcement
officers and associates with persons of disreputable character.


 8. The Respondent attended a Small School cooperation program but was
absent excessively and failed to appear for some job interview.


 9. The Respondent father lost one of the work study jobs for being involved
in a fight with a co-worker.


10. The Respondent father was referred to Dr. Joe Jeffers, a psychologist, but
discontinued attending because he, the father, felt it was not necessary.


11. The Respondent father is unable to provide the care necessary for the
physical and emotional development of the child.


12. Respondent father has an unstable work history and is not able to care for
the child financially.


13. The primary caretaker of the child has been Geneva Penny, the paternal
grandmother.


14. Respondent father was involved in a shooting incident with his father at the
home where the child resides.


15. As circumstances now exist, Respondent father could remove the child
from his mother anytime he wished which would place the child in danger
of her physical and emotional health.


16. The child has had physical problems since birth which requires an extra
degree of care which the Respondent father is unable to provide.


17. The caretaker of the child, the paternal grandparents, have a son, James
Penny, who is presently in placement receiving treatment as a result of
sexual assault he perpetrated on a 13 year old child.


18. James Penny would most likely reside at the same residence with the child
the subject of this suit once his placement was completed.


19. Petitioner is married and has a stable living environment.


20. Petitioner is able to provide a safe and healthy environment for [the] child
with the degree of stability necessary for emotional development of the
child. The [Petitioner] can also provide financial support adequate to
properly raise the child.


21. The paternal grandparents have a questionable parenting history given the
circumstances of the Respondent and James Penny.


22. Petitioner and her husband have received training for the special care that
the child needs.



This Court is bound by these unchallenged findings of fact unless the contrary is established as
a matter of law, or if there is no evidence to support the findings. See McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986). After an examination of the record, we have determined that
there is sufficient evidence to support each of the above findings, and contrary facts have not been
established as a matter of law. Therefore, we must address the appellant's points of error in light
of the above findings of fact.



STANDING


 In his first three points of error, Penny challenges the trial court's holding that
Smith had standing to bring this suit. Smith brought this suit pursuant to Tex. Fam. Code Ann.
§ 11.03(b) (Supp. 1991), which provides that "an original suit affecting the parent-child
relationship seeking managing conservatorship may be brought by a grandparent . . . if there is
satisfactory proof to the court that . . . the child's environment with the parent . . . presents a
serious and immediate question concerning the welfare of the child . . . ." Thus the critical
question on the issue of standing is whether there is satisfactory proof of a serious and immediate
question concerning Chelsea's welfare.

 We will review the trial court's decision on standing under an abuse of discretion
standard. See Von Behren v. Von Behren, 800 S.W.2d 919, 923 (Tex. App. 1990, writ denied). 
In the context of a non-parent's standing to bring a suit affecting the parent-child relationship, our
abuse-of-discretion review must focus on whether there was legally and factually sufficient
evidence in the record to support the trial court's finding of a serious and immediate question
concerning the child's welfare. See id.; see also Jacobs v. Balew, 765 S.W.2d 532, 533 (Tex.
App. 1989, no writ).

 In determining whether there is legally sufficient evidence to support the trial
court's decision on standing, "we must consider only the evidence and reasonable inferences
drawn therefrom which, when viewed in their most favorable light, support the court's finding,
disregarding all evidence and inferences to the contrary." Lewelling v. Lewelling, 796 S.W.2d
164, 166 (Tex. 1990). Considering the evidence in this light, we must determine whether there
is more than a scintilla of evidence to support the trial court's finding of a serious and immediate
question concerning the welfare of the child. Id.

 After reviewing the unchallenged findings of fact listed above and other favorable
evidence in the record, we conclude there is more than a scintilla of evidence to support the trial
court's finding on standing. The Penny family has a history of family violence. Further, Billy
Dale Penny has taken a major role in creating such a violent family environment. He has a
history of violent behavior toward people closely related to him, including Chelsea's mother and
his own father. Indeed, law enforcement officers have been called to the paternal grandparents'
home due to Penny's violence. On one occasion, the violence at the Penny home escalated to such
a level that a shooting incident occurred between Penny and his father, resulting in another
relative being slightly wounded. Chelsea was in the Penny home when the shooting incident
occurred there. The record also shows that Penny is not capable of caring for the child. In fact,
for approximately six months following the child's release from the hospital after her birth, Penny
did not live in the same home as the child, and for at least part of that time, not even in the same
city. We conclude that there is ample evidence to support the trial court's decision that Smith,
as the child's grandparent, had standing to bring this suit under section 11.03(b).

 In determining whether there is factually sufficient evidence to support the trial
court's finding, we must consider all the evidence in the record, including any evidence contrary
to the trial court's finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
After considering all of the evidence, we should set aside the trial court's finding only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 After considering all the evidence, we conclude that there is factually sufficient
evidence to support the trial court's finding that the child's environment presents a serious and
immediate question concerning the welfare of the child. In his brief, Penny points to evidence
that the child is receiving proper care and treatment. He also points to the lack of evidence that
the child is being abused or neglected. Despite this evidence, we are not persuaded that the trial
court's finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Penny has a lengthy history of violent behavior towards other members of his family. 
The fact that he has not yet directed such violence at Chelsea did not preclude the trial court from
finding the existence of a serious and immediate question concerning the child's welfare. 
Moreover, there is evidence that Penny intends to leave his parents' home and take Chelsea with
him, even though he is unable to care for her.

 The facts of this case do not reveal a grandparent bent on officious intermeddling;
rather, the evidence supports a conclusion that Smith was a grandparent "on a rescue mission." 
See Sampson, Standing to Sue in a SAPCR; Construing on a Tabula Rasa, State Bar of Texas,
Advanced Family Law Course B-1 (1986). Therefore, we conclude that there is both legally and
factually sufficient evidence to support the trial court's finding on standing. Further, because
there is sufficient evidence in the record to support the trial court's decision, we conclude that the
trial court did not abuse its discretion in finding that Chelsea's maternal grandmother had standing
to bring this suit. Penny's first three points of error are overruled. (1)



MANAGING CONSERVATOR


 In his fourth and fifth points of error, Penny argues that the evidence is legally and
factually insufficient to satisfy the requirements of Tex. Fam. Code Ann. § 14.01(b) (Supp. 1991). 
Section 14.01(b) provides that "[a] parent shall be appointed sole managing conservator . . . of
the child unless . . . the court finds that appointment of the parent . . . would not be in the best
interest of the child because the appointment would significantly impair the child's physical health
or emotional development . . . ." Therefore, in order to be appointed managing conservator, a
non-parent must affirmatively prove by a preponderance of the evidence that appointment of the
parent as managing conservator would significantly impair the child, either physically or
emotionally. Lewelling, 796 S.W.2d at 167. Thus, the non-parent must offer evidence of specific
actions or omissions of the parent that demonstrate an award of custody to the parent would result
in physical or emotional harm to the child. Id.

 After reviewing all of the evidence in the record, including the unchallenged
findings of fact and other evidence discussed above, as well as the evidence contrary to the court's
finding, we conclude that Smith has satisfied her burden of proof.

 Penny concedes that he has had problems in the past; he maintains, however, that
he has now "turned over a new leaf." As the supreme court has pointed out, however, "an adult
person's future conduct may well be measured by his recent deliberate past conduct as it may be
related to the same or similar situation." De Llano v. Moran, 333 S.W.2d 359, 361 (Tex. 1960)
(quoting Anderson v. Martin, 257 S.W.2d 347, 356 (Tex. Civ. App. 1953, writ ref'd n.r.e.)). 
If Penny continues to behave as he has in the recent past, and the trial court was entitled to
conclude from the evidence that he will, "it is reasonable to believe that he will not give his
daughter the affection, care and guidance that are essential to her physical, mental and moral
development or provide for her necessities and comforts of life commensurate with her needs and
his ability and means." De Llano, 333 S.W.2d at 361.

 We conclude that the evidence was both legally and factually sufficient to support
a finding that the appointment of Billy Dale Penny as the managing conservator would
significantly impair the child's physical health or emotional development. Thus, we overrule
Penny's fourth and fifth points of error.



CONCLUSION


 Based on our foregoing discussion, we conclude that there is both legally and
factually sufficient evidence to support the trial court's finding of standing and its appointment of
Smith as sole managing conservator of the child. We also conclude that the trial court did not
abuse its discretion. Therefore, we affirm the judgment of the trial court.



 

 J. Woodfin Jones, Justice

[Before Justices Powers, Jones and B. A. Smith]

Affirmed

Filed: January 8, 1992

[Do Not Publish]

1. [1] In construing section 14.10 of the Texas Family Code, the Texas Supreme Court has
interpreted the phrase "serious and immediate question concerning the welfare of the child" to
mean "a situation where the child [is] in imminent danger of physical or emotional harm and
immediate action [is] necessary to protect the child." Forbes v. Wettman, 598 S.W.2d 231,
232 (Tex. 1980); McElreath v. Stewart, 545 S.W.2d 955, 958 (Tex. 1977). Even assuming
that the same construction should be given to the phrase as it is used in section 11.03,
however, we conclude that evidence of imminent danger of physical or emotional harm is
present, particularly in light of Penny's violent behavior and inability to care for the child.