Brummett v. Harris Co. Childrens Protective Services 















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-123-CV

     PAULA BRUMMETT,
                                                                                              Appellant
     v.

     HARRIS COUNTY CHILDRENS 
     PROTECTIVE SERVICES, ET AL.,
                                                                                              Appellees
 

From the 308th District Court
Harris County, Texas
Trial Court # 90-44117
                                                                                                    

O P I N I O N
                                                                                                    

      This is an appeal by Appellant Paula Brummett from a judgment rendered on an instructed
verdict in a modification of conservatorship case.
      Paula Brummett, the mother of Teri Harley, a three-year-old girl, was appointed managing
conservator of Teri and two sons by a decree of divorce from William Harley on October 5, 1990. 
Paula soon thereafter married Ronnie Brummett.
      On November 4, 1991, Appellee Harris County Childrens Protective Services (hereafter
referred to as HCCPS) took custody of Teri after investigating the sexual abuse of Teri by her
stepfather Ronnie Brummett. HCCPS was appointed temporary managing conservator of Teri and
temporarily placed her with her paternal aunt Sharon Lira.
      HCCPS filed this action to modify the October 5, 1990, divorce decree and to be appointed
permanent managing conservator of Teri. Sharon Lira intervened seeking to be appointed Teri's
permanent managing conservator. Appellant Paula Brummett then filed a counterclaim seeking
dissolution of the HCCPS temporary managing conservatorship and for a reinstatement of her sole
managing conservatorship of Teri and demanded a jury.
      A jury trial began February 15, 1993. During presentation of the HCCPS evidence, it was
reflected that Appellant had continued to live with Ronnie for a time after she learned of the sexual
assault on Teri but she was willing to divorce Ronnie if that would help her regain custody of Teri. 
There was evidence that Ronnie had been convicted of the sexual assault on Teri, sentenced to
forty years in the penitentiary and was in the penitentiary at that time. There was further evidence
that Teri had previously been sexually abused by her biological father, William Harley, and that
he was living across the street from his sister, Sharon Lira, with whom HCCPS had placed Teri.
      After presentation of HCCPS's evidence and during the presentation of the paternal aunt
Sharon Lira's evidence, the trial judge said to Appellant's attorney:
THE COURT:Mr. Haggerty, I would like for you to put your witness on the stand
now, the biological mother. Come up.
[COUNSEL]:I have other witnesses also.
THE COURT:You have what?
[COUNSEL]:Other witnesses.
THE COURT:Sure you do, but I want you to hear this witness. Go ahead.
Thereupon, Appellant took the stand and testified that she was twenty-three years of age; that she
had four children including Teri; that Teri's biological father sexually abused Teri in September
1991; that she called an attorney to try to get an order against him having visitation; that thereafter
on November 1, 1991, she learned that Teri's stepfather Ronnie Brummett had sexually abused
Teri; that she took Teri to the hospital; and that Ronnie admitted to the police that he had sexually
abused the child.
      At this point, the trial judge instructed the bailiff to retire the jury and then stated:
"I am about to make an unusual and perhaps unprecedented statement. At this time
I am going to issue an instructed verdict . . . I am going to make the biological mother
and the biological aunt here joint managing conservators with the biological aunt as
primary. Therefore, she will have the right to name the domicile, the religion and the
school."
      The trial court signed its order on March 15, 1993, appointing Appellant and Sharon Lira
joint managing conservators of the child with Sharon Lira having the right of physical possession
of the child and the right to direct the child's religious training and to establish the child's
residence. Appellant was accorded "supervised visitation" with her child.
      Appellant filed a motion for new trial asserting that she was not allowed to put on all of her
evidence from herself plus the evidence from six named witnesses; that fact issues existed which
should have been considered by the jury; and that the evidence adduced was not sufficient to show
that she was not capable of taking care of and protecting her child at the present time.
Her motion for a new trial was denied.
      Appellant appeals the Order\Judgment rendered on the instructed verdict contending, among
other matters, that the trial court erred in issuing an instructed verdict, in granting judgment
thereon, and in overruling her motion for a new trial because she, the mother, was not granted the
opportunity to present evidence through her witnesses, and was denied trial by a jury. 
      None of the appellees have filed a brief.
      The presumption that the best interest of a child is served by awarding custody to a natural
parent is deeply embedded in Texas law. Lewelling v. Lewelling, S.Ct., 796 S.W.2d 164. The
natural right between parent and child is one of constitutional dimension and should not be
disturbed except for the most compelling and serious reasons. The material time concerning
fitness for child custody is at the time of trial and evidence of past misconduct or neglect is not
of itself sufficient to show a parent's present unfitness for child custody. May v. May, Tex.
App.—Corpus Christi) 829 S.W.2d 373. 
      Texas Family Code section 11.13(a) provides in a suit affecting the parent-child relationship
(except a suit in which adoption is sought) any party may demand a jury trial. The appellant-mother demanded a jury and a jury trial was in its second day when the trial judge stopped the
evidence and issued the instructed verdict giving custody to the paternal aunt. The instructed
verdict amounts to a denial of the mother's right to trial, denial of her right to trial by jury, and
a denial of her day in court.
      The trial judge abused his discretion in instructing the verdict and in rendering the judgment
thereon.
      Appellant's contention and point, supra, is sustained. The Judgment/Order of the trial court
is reversed and the cause is remanded for trial.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Reversed and Remanded
Opinion delivered and filed February 9, 1994
Do not publish