**Opinion filed February 6, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00250-CV

_____

## IN THE INTEREST OF S.D.S., A CHILD

**On Appeal from the County Court at Law No. 2**

**Ector County, Texas**

**Trial Court Cause No. CC2-3179-PC**

## MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of S.D.S.'s mother and father. The mother filed a notice of appeal. We affirm.

*Issues*

S.D.S.'s mother presents eight issues for review. In her first six issues, the mother challenges the legal and factual sufficiency of the evidence to support the termination of her rights. In her final two issues, the mother challenges the appointment of the Department of Family and Protective Services, instead of the mother, as the child's managing conservator.

*Legal and Factual Sufficiency*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

*A. Acts of the Mother*

In this case, the trial court found that the mother had committed five of the acts listed in Section 161.001(1): those found in subsections (D), (E), (M), (N), and (O). The trial court's findings under the respective subsections were that the mother had placed or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, that the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that the mother had previously had her parental rights terminated to another child under subsection (D) or (E), that the mother had constructively abandoned S.D.S., and that the mother had failed to comply with the necessary provisions of a court order.

In her third issue, the mother challenges the sufficiency of the evidence under Section 161.001(1)(M). To establish this ground for termination, the

Department offered into evidence a certified copy of a court order terminating the mother's parental rights to her other child, T.G. Subsection (M) applies when the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)." *Id.* § 161.001(1)(M). The prior order of termination contained a finding that the mother had endangered T.G. by placing her in unsafe conditions under Section 161.001(1)(D) and by engaging in endangering conduct under Section 161.001(1)(E). The certified copy of the court order of termination of the mother's parental rights to a child other than S.D.S. constitutes clear and convincing evidence sufficient to support the trial court's finding under Section 161.001(1)(M). *See Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 648 (Tex. App.—Austin 2005, pet. denied).

The mother's third issue is overruled. Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the mother's first, second, fourth, or fifth issues regarding the sufficiency of the evidence to support the trial court's findings under Section 161.001(1)(D), (E), (N), and (O). *See* TEX. R. APP. P. 47.1.

### B. Best Interest of the Child

In the mother's sixth issue, she argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in S.D.S.'s best interest. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental

abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows that S.D.S. was removed from his parents' care when he was an infant. Members of the hospital staff were concerned that the mother was not able to properly take care of S.D.S. When the Department's investigator arrived to check on S.D.S., the home was "cluttered and dirty," and the mother was not holding the baby, who was only two or three days old, in a safe manner. The Department's investigator was of the opinion that the mother did not have the intellectual capability to properly and safely care for an infant. At the time the Department received the intake regarding S.D.S., the mother already had an open case due to her neglectful supervision and inability to care for her other child.

The mother and her boyfriend (S.D.S.'s father) lived with the mother's stepfather, whom the mother had previously accused of sexual assault. According to the Department's investigator, the mother had previously accused her stepfather of sexually assaulting her by "using a cell phone and inserting it up her vagina." The mother testified that her MHMR caseworker had forced her to make the allegation against her stepfather; the mother also said that she had not made any such allegation because "[t]hose words did not come out of [her] mouth." At the time of removal, the mother's stepfather threatened the Department's investigator.

The Department's conservatorship caseworker, Xenia Martinez, testified about the parents' failure to complete the services that were ordered by the court.

4

Initially, the mother attempted to comply with some of her services. However, the mother did not complete individual counseling, did not complete the parenting classes, failed to submit to the Department's requests for drug screens, failed to cooperate with the Department, missed twenty of the possible forty-three visits with S.D.S., and continued to live with her stepfather. Martinez testified that she was unable to contact the mother and that, ultimately, the mother left a voicemail message in which she told Martinez not to call her anymore and not to bother them. Martinez did not believe that the mother had demonstrated an ability to provide S.D.S. with a safe and appropriate home environment.

Rachel Dobbs, the instructor of the mother's parenting class, wrote a letter to the Department stating that Dobbs could not provide the mother with the skills that she needed for parenting. The mother was referred elsewhere but did not follow through with the referral. Dobbs had reservations about the mother's ability to care for a child because of the mother's learning disabilities and mental health. Dobbs testified that the mother "doesn't have the thought processes to be a protective parent, to watch after a child safely." Also, the mother refused to take medications prescribed to her by MHMR. Additionally, a Department employee, who supervised some of the mother's visitations with S.D.S., expressed concerns about the parenting skills displayed by the mother during some visits.

The Department requested that the parents' rights be terminated so that S.D.S. could be free for adoption by his foster parents, who were willing and able to meet S.D.S.'s needs. Martinez testified that S.D.S. was "very much bonded" to his foster parents and to another child in that home. S.D.S. was a "very happy baby" and had thrived in the home of his foster parents.

We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of the

child.  *See Holley*, 544 S.W.2d at 371–72.  Upon considering the record as it relates to the child's relationships with the mother and the foster parents, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the mother and of the foster parents, the stability of the current placement, the programs available to assist the family, the plans for the child by the Department, the mother's inability to safely parent S.D.S., the mother residing with a man whom she had once accused of sexual assault, and the mother's failure to complete her court-ordered services, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the mother's parental rights is in the best interest of the child.  *See id.*  The trial court's finding as to best interest is supported by clear and convincing evidence.  The mother's sixth issue is overruled.

*Appointment of Managing Conservator*

In her seventh and eighth issues, the mother argues that the evidence is legally and factually insufficient to establish that appointment of the mother as the child's managing conservator would significantly impair the child's physical health or emotional development and that appointment of the Department as the child's managing conservator is in the child's best interest.  *See* TEX. FAM. CODE ANN. § 153.131 (West 2008).  We disagree.

The findings necessary to appoint a nonparent as sole managing conservator need only be established by a preponderance of the evidence.  *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990).  Consequently, we review a trial court's conservatorship decision under a less stringent standard of review than the standard for termination.  *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).  A conservatorship determination is subject to review for an abuse of discretion and may be reversed only if that determination was arbitrary and unreasonable.  *Id.*  As we held above, the trial court's finding that termination of the mother's parental

rights would be in the best interest of S.D.S. was supported under the higher, clear-and-convincing burden of proof. The record showed that the mother was not capable of safely parenting a child, that the Department's goal for S.D.S. was adoption, that S.D.S.'s current foster parents wanted to adopt him, that he was very happy and was thriving in their care, and that neither the mother nor the father had offered any suitable alternatives for placement. The trial court did not abuse its discretion with respect to the appointment of the child's managing conservator. The mother's seventh and eighth issues are overruled.

We affirm the trial court's order of termination.

JOHN M. BAILEY

JUSTICE

February 6, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.