**Opinion filed April 3, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00311-CV

_____

## IN THE INTEREST OF R.T.M., JR., A CHILD

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 48,132**

### MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of the mother and father of R.T.M., Jr. The mother voluntarily relinquished her parental rights and did not file an appeal. The father timely filed an appeal. We affirm.

*Issues*

Appellant presents five points of error on appeal. In the first three points, he challenges the legal and factual sufficiency of the evidence to support termination. In the fourth point, Appellant contends that the trial court erred in determining that the Department of Family and Protective Services should remain the permanent

managing conservator for the child. Appellant complains in his final point of the admission of hearsay.

*Termination Standards and Findings*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(1)—those found in subsections (D) and (E). Specifically, the trial court found that Appellant had placed or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being and that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. The trial court also found, pursuant to Section 161.001(2), that termination of Appellant's parental rights would be in the best interest of the child.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet.

denied).  But courts may use the non-exhaustive *Holley* factors to shape their analysis.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.  *Id.*  Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest.  *C.J.O.*, 325 S.W.3d at 266.

*Evidence at Trial*

At the time of the final hearing, the child was five years old.  The child was small, speech delayed, and aggressive.  He had been neglected.  The Department originally removed R.T.M., Jr. from his mother's care while Appellant was incarcerated.  Appellant had been convicted of burglary of a habitation and sentenced to a five-year term of confinement when the child was one year old.  Appellant served four years of that sentence and, thus, did not see the child for four years.  After Appellant was released from prison and demonstrated adequate compliance with the service plan, the trial court placed the child with Appellant in a monitored return.

The terms of the monitored return required, among other things, that the child "have no unsupervised or supervised contact with his mother [A.R.] at any time" and that the mother "is not to be in the home and is not to have phone contact with" the child.  This language was included in the child safety evaluation

and plan signed by Appellant on May 20, 2013. The document also stated, "Failure to comply with this safety plan could result in CPS taking legal actions to remove [the child] from the home and place him in foster care or in another relative/fictive kin placement." Appellant was aware that it was very important that he not permit the child's mother to have any contact with the child. The Department's caseworker testified that she had informed not only Appellant but also Appellant's father and stepmother, with whom Appellant lived at the time, that the child was not to have any contact with his mother.

According to the Department, the mother was a major safety concern. The mother had aggressive behaviors and used drugs. She had previously had other children removed from her care; had been to prison; had been in and out of jail; and, at the time of the final hearing, was in jail for stabbing someone.

The Department's caseworker, Kristi Saenz, conducted a home visit on July 18, 2013, and discovered that the mother had been staying in the home with Appellant and the child. Appellant was not home at the time of Saenz's visit, but the mother informed Saenz that she had been staying with Appellant and the child for several days and that she had had contact with them for several weeks. Because of the mother's presence and because of Appellant's failure to comply with the safety plan, his inconsistent contact with the Department, his unstable living arrangements, and his false testimony about where he lived, the Department removed the child from the monitored return and requested that the trial court terminate Appellant's parental rights. Appellant later admitted that the mother had been in the home with the child.

Saenz testified that she conducted the home visit because she had concerns about the living situation based upon Appellant's testimony at a court hearing the previous day. Appellant had testified that he was staying in a trailer but that the child was sleeping in the house. During the home visit, Saenz observed that there

4

was a toddler bed in the house but that it was unassembled.  The child was not in the house when Saenz arrived.  She was told that the child was next door.  Saenz testified that, while she was there, the child came into the house and visited with Saenz.  The child subsequently ran out of the house toward a trailer on the property and said that he was "going to see [his] mom."  Saenz then discovered the child's mother on the property and spoke with her.

Saenz testified that, during the monitored return, Appellant failed to maintain stable housing and employment.  Appellant also failed to perform services and missed visitations with the child after the child was removed from the monitored return.  Furthermore, when Saenz asked Appellant to take a drug test, Appellant admitted that he had used cocaine.

At the final hearing, Appellant testified that he was in compliance with his parole and denied that he had used any illegal controlled substances since his release from prison.  Appellant also testified that he was out of town at the time of Saenz's home visit and that he was unaware that the mother was at the house with the child.

After the monitored return, the child was placed in the home of foster parents with whom he had previously lived in October, November, and December 2012.  The placement was a foster-to-adopt home, and the foster parents were trained and licensed foster parents.  The foster mother testified at trial that she and her husband would like to adopt the child and that the child was adjusting well and bonding with the foster parents.  According to the foster mother, the child was happy and his behavior had improved.  The foster parents had enrolled the child in play therapy and were in the process of getting him set up for speech therapy.

The Department's goal for the child was unrelated adoption by the current foster parents.  Both Saenz and the child's guardian ad litem, who is a case supervisor with CASA of West Texas, testified that it would be in the child's best

5

interest for the parents' rights to be terminated and for the foster parents to be permitted to adopt the child. According to the child's guardian ad litem, relative placements had been attempted and all viable relatives had been "ruled out."

*Endangering Conduct*

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. *See* FAM. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265. Additionally, a parent's imprisonment is a factor to be considered under subsection (E) when determining whether the parent engaged in a course of conduct that endangered a child. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533–34 (Tex. 1987).

The evidence here showed a course of conduct committed by Appellant that endangered his child. Appellant committed an offense for which he was convicted and incarcerated for four years of the child's life. During the monitored return after Appellant's release from prison, Appellant failed to comply with the safety

6

plan and demonstrated an inability to keep the child safe. Appellant endangered the child by permitting the child to have contact with the child's mother, which was strictly forbidden by the safety plan signed by Appellant. Based on the record in this case, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(E). Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address Appellant's first point of error, in which he contends that the evidence is insufficient to support the trial court's finding under subsection (D). *See* TEX. R. APP. P. 47.1. Appellant's second point of error is overruled.

### *Best Interest*

In his next point of error, Appellant challenges the sufficiency of the evidence with respect to the trial court's finding that termination of Appellant's parental rights is in the best interest of the child. We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. Upon considering the record as it relates to the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; Appellant's failure to comply with the safety plan; the parental abilities of Appellant and the foster parents; the plans for the child by the Department; the programs available to assist the foster parents to promote the best interest of the child, such as speech therapy and play therapy; the instability of Appellant's home and employment; the stability of the child's placement; acts and omissions indicating that the parent-child relationship was not a proper one; Appellant's drug use; and Appellant's absence from the child's life

7

for more than four years, we hold that the evidence is sufficient to support the findings that termination of Appellant's parental rights is in the best interest of the child. *See id.* The third point of error is overruled.

*Appointment of Managing Conservator*

In his fourth point, Appellant argues that the evidence is legally and factually insufficient to establish that appointment of Appellant as the child's managing conservator would significantly impair the child's physical health or emotional development and that appointment of the Department as the child's managing conservator is in the child's best interest. *See* FAM. CODE § 153.131 (West 2014). We disagree.

The findings necessary to appoint a nonparent as sole managing conservator need only be established by a preponderance of the evidence. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). Consequently, we review a trial court's conservatorship decision under a less stringent standard of review than the standard for termination. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A conservatorship determination is subject to review for an abuse of discretion and may be reversed only if that determination was arbitrary and unreasonable. *Id.* As we held above, the trial court's finding that termination of Appellant's parental rights would be in the best interest of the child was supported under the higher, clear-and-convincing burden of proof. The record showed that Appellant had demonstrated an inability to safely parent the child, that the Department's goal for the child was adoption, that the child's current foster parents wanted to adopt him, that he was very happy and was thriving in their care, and that there were no viable options for relative placement. The trial court did not abuse its discretion with respect to the appointment of the child's managing conservator. Appellant's fourth point of error is overruled.

*Hearsay*

In his final point, Appellant contends that the trial court abused its discretion in admitting hearsay testimony into evidence at the final hearing. We review a trial court's evidentiary rulings for abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if its actions are arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning*, 972 S.W.2d at 43.

When Saenz and the guardian ad litem were asked some questions about what the mother told them, Appellant objected that the mother's out-of-court statements constituted hearsay. The trial court overruled these objections. Both Saenz and the guardian ad litem testified that the mother had said that she felt that it would be in the child's best interest to remain in his current placement and that it would not be in the child's best interest to be returned to Appellant because of Appellant's drug use, lack of employment, and lack of housing. Appellant also complains that the trial court overruled Appellant's hearsay objection when Saenz was asked if the mother had told Saenz how long she had been at Appellant's residence. Appellant, however, did not object when Saenz was asked other similar questions; Saenz testified without objection that the mother said that she "had been staying there for several days to include staying at the house with [the child and Appellant]" and with them at a different location for a considerable number of weeks.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. TEX. R. EVID. 801. Hearsay is not admissible except as provided by statute, the Texas Rules of Evidence, or other rules prescribed pursuant to statutory authority. TEX. R. EVID. 802. The mother's out-of-court statements

9

regarding Appellant's drug use, employment, and housing were hearsay when offered against Appellant.

However, we conclude that any error in the admission of the complained-of testimony does not constitute reversible error in this case. In a civil case, a judgment may not be reversed on appeal based upon a trial court's error of law unless the error (1) probably caused the rendition of an improper judgment or (2) probably prevented the appellant from properly presenting the case on appeal. TEX. R. APP. P. 44.1(a). Furthermore, the general rule is that an error in the admission of testimony is deemed harmless if the objecting party permitted the same or similar evidence to be introduced without objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984).

In the present case, evidence similar to the testimony about which Appellant complains in his brief was admitted at trial without objection. Additionally, the complained-of testimony was cumulative of other evidence. Saenz testified that she observed the mother and the child at Appellant's residence, that Appellant had admitted they were there, that Appellant had admitted using cocaine, that Appellant lacked stable employment, and that Appellant's housing situation was not stable. We cannot hold that the admission of the complained-of testimony probably caused the rendition of an improper judgment or prevented Appellant from presenting his case on appeal. Appellant's fifth point of error is overruled.

### This Court's Ruling

We affirm the trial court's order of termination.

MIKE WILLSON

April 3, 2014                                                            JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.