**Opinion filed April 10, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00280-CV

_____

## IN THE INTEREST OF N.T., A CHILD

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C47218**

## M E M O R A N D U M   O P I N I O N

After having previously terminated the parental rights of N.T.'s father, the trial court entered an order in which it terminated the parental rights of N.T.'s mother. The mother filed an appeal. In a single issue on appeal, she challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding.[1] We affirm.

---

[1]We note that, in their brief, Appellees (the foster parents) assert that Appellant has waived her sole issue on appeal by failing to adequately brief it. Because we believe the issue to be adequately briefed, we reject Appellees' suggestion that Appellant has waived her challenge to the trial court's best interest finding.

*Termination Findings and Standards*

The natural right that exists between parents and their children is a constitutionally protected right, and termination of the parent-child relationship can only be justified by the most solid and substantial reasons. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b). In this case, the trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, had failed to support the child in accordance with her ability during the relevant one-year period, and had failed to comply with provisions of a court order that specifically established the actions necessary for her to obtain the return of the child. *See id.* § 161.001(b)(1)(D), (E), (F), (O). Appellant does not challenge these findings, but she does challenge the trial court's finding that termination is in the child's best interest. *See id.*

2

§ 161.001(b)(2).  Accordingly, we will uphold the order of termination if the evidence is sufficient to support the best interest finding.

With respect to the best interest of a child, no unique set of factors need be proved.  *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).  But courts may use the non-exhaustive *Holley* factors to shape their analysis.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.  *Id.*  Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest.  *C.J.O.*, 325 S.W.3d at 266.

*Best Interest: Evidence and Analysis*

The record in this case reflects that the Department of Family and Protective Services removed N.T. from his parents when he was nine months old.  When N.T. was eight months old, Appellant was experiencing some mental health issues and decided to check herself in for treatment—where she remained for only four or five days.  She left N.T. with a neighbor and instructed the neighbor to call N.T.'s father and have him come get N.T. so that N.T. could stay with the father.  Appellant knew that N.T.'s father was a violent man.  Although Appellant had obtained a protective order against the father, she nonetheless placed N.T. in the father's care while she

sought mental health treatment. Appellant testified, however, that the father had only been violent toward her, not toward N.T.

The Department became involved while N.T. was in his father's care. Soon thereafter, the father absconded to Michigan with N.T. The mother helped the Department locate and take custody of N.T. after the father took him to Michigan. At the time of removal from the father, N.T. was developmentally delayed. N.T. also tested positive for a variety of drugs at that time, including cocaine, heroin, and cannabis.

Not long after removal, the Department placed N.T. in a foster home; he remained in that same foster home throughout the proceedings. The Department pursued termination of the father's parental rights, and the parties involved in this case proceeded on the presumption that Appellant was going to relinquish her parental rights after the father's parental rights were terminated; however, Appellant changed her mind and decided not to relinquish her parental rights. In response, the foster parents filed a petition for termination by which they sought to have Appellant's parental rights terminated, and Appellant filed a counterpetition in which she sought sole managing conservatorship.

At the trial on those petitions, Appellant denied that, when she left N.T. in the father's care, she knew that the father used illegal drugs. However, there was some evidence presented at trial that Appellant had told one of the conservatorship workers in this case that, when she first met the father, "the only thing he did was smoke marijuana" but that she later became aware that he was using cocaine, at which time "she kicked him out." Appellant denied that she would permit the father to see N.T. if N.T. were returned to Appellant; she testified that she had made significant progress and could now avoid the father and keep N.T. safe. However, text messages between Appellant and the father were admitted into evidence. In those messages, which appear to have been typed in January 2017 prior to the

termination of the father's parental rights in October 2017, Appellant asked: "So did they share with you about how we can lose our parental rights, if I let you see him unauthorized[?]" In subsequent messages that same day, Appellant stated: "I'm NOT LOSING MY SON AGAIN, F-----G WIT YO DUMB ASS"; "Bitch you forcing it, get mad at yourself n---a. You DID DIS, HOLD YOURSELF ACCOUNTABLE MF"; and "When did [sic] case over, you could see him. But until then CPS calling the mf shots." However, the record also reflects that Appellant had obtained a protective order against the father and that, in February 2017, she called the police when the father violated that order by breaking into Appellant's apartment while Appellant and N.T. were there.

Appellant testified that she had previously decided to relinquish her parental rights to N.T. because, at that time, she believed that N.T. would be better off if his foster parents raised him. Appellant had unsupervised visitation with N.T. while the case was pending in the trial court and continued to develop a relationship with him. She testified that she loves N.T., that she needs him, and that she is "ready" to resume her role as his mother. The record reflects that Appellant was protective of N.T., that Appellant had acted appropriately from the very beginning of this case, that N.T. was bonded with Appellant, that Appellant exhibited appropriate parenting skills, and that Appellant and N.T. had a loving relationship. Appellant's therapist believed that she had "fully utilized counseling services by learning coping and parenting skills necessary to provide a safe household for children." Appellant obtained stable employment at a bank, and she had appropriate housing throughout the case below. Furthermore, all of Appellant's drug tests during this case were negative, and there was no indication at trial that she had ever used illegal drugs.

There was some evidence in the record about Appellant's parenting skills with respect to her other two children. Appellant's middle child is in another state, and the paternal grandmother has custody of that child. Appellant's oldest child lives

with Appellant and does very well in school. However, when asked at trial about an incident in which her oldest child "snatched a loaf of bread" out of Appellant's hand, Appellant admitted, "I pushed her down, and I choked her, yes, I did."

The foster parents love N.T. and would like to adopt him if possible. N.T. is doing well in the foster parents' home and has bonded with them. N.T. refers to his foster parents as "mommy and daddy." The record reflects that the foster parents are able to meet all of N.T.'s current and future needs. The foster parents doubted Appellant's ability to provide financially for N.T. and were concerned about Appellant's mental health issues and about her ability to keep N.T. safe. The foster father did not believe that N.T. would be safe in Appellant's home. The foster mother was also concerned about N.T.'s safety because she was "not convinced" that the father was out of Appellant's life. The foster mother testified, "I don't feel that [Appellant] can care for him appropriately. I'm worried about the -- everything that we've heard about the continued mental difficulties that she has." The foster mother testified that it would be in N.T.'s best interest to terminate Appellant's parental rights.

The Department was not in agreement with the foster parents on this matter. A Department supervisor testified that the Department had not requested the termination of Appellant's parental rights because there were no grounds to do so. The Department's plan for N.T. was to return him to Appellant. Not one of the eight Department employees that testified at trial stated that it would be in N.T.'s best interest to terminate Appellant's parental rights. Two conservatorship caseworkers testified about the strong bond between N.T. and Appellant, and one of those caseworkers explicitly testified that it would not be in N.T.'s best interest to terminate Appellant's parental rights. Appellant did not want her parental rights to be terminated and did not believe that it would be in N.T.'s best interest to do so because N.T. loves her and they have a mother/son bond.

6

The child's guardian ad litem, a CASA volunteer, testified that she believed that termination of Appellant's parental rights would be in N.T.'s best interest. However, the guardian ad litem also testified that she "[a]bsolutely" believed that N.T. should continue to have a relationship with Appellant—a position that is inconsistent with termination. The child's attorney ad litem noted that Appellant had previously expressed a desire to "relinquish her rights because [N.T.] was in a good place"; he then recommended "that it should become the final order" of the trial court. By "it," we assume that the attorney ad litem meant termination, rather than relinquishment, because a trial court cannot order a parent to voluntarily relinquish the parent's parental rights.

Texas law presumes that the best interest of a child is served by awarding custody to a natural parent. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990). Furthermore, involuntary termination proceedings and statutes must be strictly scrutinized in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012); *Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985). Here, when viewed in the light most favorable to the finding, there is evidence in the record that termination of Appellant's parental rights would be in N.T.'s best interest. *See J.P.B.*, 180 S.W.3d at 573 (legal sufficiency standard). Furthermore, based on the record as a whole, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Appellant's rights would be in N.T.'s best interest. *See C.H.*, 89 S.W.3d at 25–26 (factual sufficiency standard). In reaching this conclusion, we have considered the *Holley* factors, as well as the presumption in favor of Appellant as N.T.'s natural parent. *See Holley*, 544 S.W.2d at 371–72; *Holick*, 685 S.W.2d at 20–21. Despite Appellant's bond with N.T., the trial court could have determined that Appellant is unable to keep N.T. safe. We hold that the evidence is legally and factually sufficient to support the trial court's best interest finding. Accordingly, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


KEITH STRETCHER

JUSTICE


April 10, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.