# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00162-CV

---

**J. H., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 146TH DISTRICT COURT OF BELL COUNTY**
**NO. 315,728-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

J.H. (Mother) appeals from the trial court's de novo order appointing the paternal grandmother (Grandmother) as the sole managing conservator of J.H.'s two children.[1] The trial court did not appoint Mother as a managing or possessory conservator. For the following reasons, we affirm the trial court's order.

## BACKGROUND

In February 2020, the Department of Family and Protective Services filed an original petition in a suit affecting the parent-child relationship concerning Mother's children, who were six and five years old, and requested an order for protection in an emergency arising from Mother's conduct including her methamphetamine use. The children were residing with

---

[1] We refer to J.H. by her initials or as Mother. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8. The children's father was properly served in the underlying proceeding but did not appear and has not appealed from the trial court's order. He was not named a managing or possessory conservator of the children.

Grandmother, and the Department became involved when Mother was attempting to take the children from Grandmother. According to the Department's supporting affidavit, Grandmother feared for the children's safety because Mother "[had] been to rehab repeatedly" and "had drugs in her apartment and crack pipes," and Mother's girlfriend was "known to use drugs." The trial court granted the Department's request, appointed the Department as the temporary managing conservator, and placed the children with Grandmother.

In May 2020, the Department's home study on Grandmother was not approved because of concerns about Grandmother's ex-husband who was a registered sex offender, but the children remained in Grandmother's care during the pendency of the case. According to the Department's supporting affidavit, Grandmother and her ex-husband had been divorced for six years, he continued to provide financial support and to visit, but he was not left alone with the children. During the pendency of the case, the Department's family services plan for Mother required her to attend court hearings, obtain and maintain employment, complete specified services, and drug test. Mother, however, tested positive for methamphetamine, inconsistently drug tested, did not appear for hearings, had minimal contact with the Department, and did not comply with services. She also had one visit with her children that was on August 28, 2020.

The final hearing before the associate judge was on September 15, 2020. The Department requested that Mother not be given a designation, that Grandmother be appointed the sole managing conservator of the children with discretion to determine parental visitation, and that unsupervised contact between the children and Grandmother's ex-husband be enjoined. The associate judge took judicial notice of the Department's final report to the Court, the Department's witness was the conservatorship caseworker assigned to the case, and Mother testified on her own behalf.

2

The caseworker testified that the children had lived with their Grandmother for most of their lives and were "doing, extremely, well" in their current placement, that Grandmother was "very open and willing to have a normal relationship with [Mother]" and to supervise visits, and that Mother had one visit on August 28, but that after that visit, Mother had not contacted Grandmother to schedule a visit. As to Mother's compliance with services, the caseworker testified that Mother had completed an OSAR assessment and "recently" started drug testing but that she had not drug tested consistently. The caseworker testified that Mother's pattern of missing drug tests or going on separate days from scheduled testing days was concerning to the Department "[c]onsidering that we [were] involved due to [Mother's] heavy drug use, such as methamphetamine, and her inconsistencies throughout the case." The caseworker also testified that Mother had not been "consistent in participating in any services" and that she was not successfully discharged from any services.

In her testimony, Mother admitted that she had made mistakes and had problems with methamphetamine in the past, had tested positive for methamphetamine, started services late in the case, and was not working. She also agreed that her children were "being taken care of" by Grandmother. Mother, however, denied that the children were staying with Grandmother prior to the Department's involvement and testified that she had "scheduled everything" that the Department requested and that she was "getting the hang of everything." Mother testified that she "was doing individual counseling in the wrong place," that she had done two sessions of counseling within the week before trial and the psychological evaluation "last month," that she had "only missed one [drug] test," and that her drug tests "have all been negative." She further explained that she had to quarantine for two weeks because of illness and that she had tried to contact Grandmother but "she has not been answering [Mother's] phone calls." Mother testified

3

that she brought her girlfriend to visit with her children because they were engaged and that if she were given more time, she would "do anything and everything" she had to do.

Following the hearing, the associate judge signed an order appointing Grandmother as the sole managing conservator with parental visitation at Grandmother's discretion, enjoining unsupervised contact between the children and Grandmother's ex-husband, and not appointing Mother as a managing or possessory conservator. Mother requested a de novo hearing, and the trial court held the de novo hearing in December 2020. Although she was informed of the hearing's date and time, Mother did not personally appear.

The witnesses at the de novo hearing were the conservatorship caseworker and the children's guardian ad litem. It was the caseworker's opinion that Mother had not demonstrated an ability to provide a safe, suitable home for her children. The caseworker testified that Mother understood what was expected of her but that she missed "probably well over 20" drug tests during the pendency of the case and that she was not employed or providing any support to her children. The caseworker testified that the results of Mother's psychological examination "indicated that she was—had substance abuse disorder, as well as depression and bipolar disorder, and that she should be referred to inpatient services for her drug disorder, as well as seek individual counseling and possibly family therapy with her children" but that Mother did not receive any of these services. Mother was referred to an inpatient service but "she did not seek out that service." The caseworker set up a counseling service for Mother in March but Mother did not call until August to set up an appointment and then she "did not show up for the appointment that [she] scheduled for herself." The caseworker also had been unable to visit

4

Mother's home and had not had contact with Mother.[2]  Concerning the children's placement, the caseworker testified that Grandmother was meeting the children's emotional and physical needs and providing them with a safe, stable home.

The guardian ad litem testified that the children wanted to have contact and spend time with Mother, but the guardian ad litem did not think that was in the children's best interest "if [Mother] is going to continue to kind of bounce in and out of rehab" and "would trust [Grandmother] to make that decision."  The guardian ad litem also reported that Grandmother has "done a really good job" taking care of the children and that she is "the only parent or person in a parental role that's been stable for them, that has been consistent, has made sure that all of their needs are met."  It was the guardian ad litem's opinion that placing the children with Grandmother was in their best interest.  The trial court adopted the associate judge's ruling and thereafter signed the de novo order appointing Grandmother as the sole managing conservator of the children, enjoining unsupervised contact between the children and Grandmother's ex-husband, and not appointing Mother as a conservator.  This appeal followed.

## ANALYSIS

In her sole issue, Mother argues that the trial court abused its discretion, or alternatively erred, when it did not award her conservatorship of her children and found that it would be against the children's best interest to appoint her as the managing or possessory conservator of her children.  Mother challenges the sufficiency of the evidence to support the trial court's findings and argues that the Department did not overcome the parental presumption.

---

[2] The caseworker testified that she contacted Mother based on two telephone numbers that she had but that sometimes Mother "would call from a new number and [she] would attempt to call that number again."  The caseworker "ended up having about four numbers that [she] would call on a monthly basis to try to contact [Mother]."

**Standard of Review and Applicable Law**

We review conservatorship determinations for abuse of discretion. *In re J.J.R.S.*, __ S.W.3d __, __, No. 20-0175, 2021 Tex. LEXIS 446, at *10–11 (Tex. June 4, 2021); *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re A.M.T.*, 592 S.W.3d 974, 976 (Tex. App.—San Antonio 2019, pet. denied). A trial court's conservatorship determination "may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d at 616 (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)); *see In re J.J.R.S.*, 2021 Tex. LEXIS 446, at *11.

Legal and factual sufficiency are not independent grounds of error but factors used to determine whether the trial court abused its discretion. *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Under this standard, an appellate court considers whether the trial court had sufficient information on which to exercise its discretion and, if so, whether the trial court erred in its application of discretion. *Zeifman*, 212 S.W.3d at 588. Traditional sufficiency review applies with regard to the first question. *Id.*; *Echols v. Olivarez*, 85 S.W.3d 475, 478 (Tex. App.—Austin 2002, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 807, 810 (Tex. 2005) (describing legal sufficiency review); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (describing factual sufficiency review). A trial court does not abuse its discretion as long as there is some substantive, probative evidence to support its decision. *Zeifman*, 212 S.W.3d at 587; *Echols*, 85 S.W.3d at 477.

The primary consideration in conservatorship determinations is the child's best interest. Tex. Fam. Code § 153.002; *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing non-exclusive factors for best-interest determination); *see also Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002) (explaining that "[s]uits affecting the parent-child relationship are intensely fact

6

driven, which is why courts have developed best-interest tests that consider and balance numerous factors"). "When a court determines conservatorship between a parent and a nonparent, a presumption exists that appointing the parent as the sole managing conservator is in the child's best interest." *In re M.J.C.B.*, No. 11-14-00140-CV, 2014 Tex. App. LEXIS 12387, at *2–3 (Tex. App.—Eastland Nov. 14, 2014, no pet.) (mem. op.) (citing Tex. Fam. Code § 153.131); *see In re C.J.C.*, 603 S.W.3d 804, 807 (Tex. 2020) (recognizing that "[t]he presumption that the best interest of the child is served by awarding custody to [a] parent is deeply embedded in Texas law" (quoting *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000))); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (explaining that "there is a strong presumption that the best interest of a child is served by keeping the child with a parent" (citing Tex. Fam. Code § 153.131(b))).

"[U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child." Tex. Fam. Code § 153.131(a). And "[t]he court shall appoint as a possessory conservator a parent who is not appointed as a sole or joint managing conservator unless [the court] finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child." *Id.* § 153.191; *see In re D.S.B. & K.A.B.*, No. 05-14-00950-CV, 2016 Tex. App. LEXIS 9111, at *9–11 (Tex. App.—Dallas Aug. 22, 2016, no pet.) (mem. op.) (explaining that "strong presumption exists that the best interest of a child is served by keeping the child with the natural parent, and, if managing conservatorship cannot be awarded to the parent, the parent should be appointed possessory conservator").

7

Generally evidence of a parent's "specific actions or omissions" that demonstrate the award of custody to the parent would have a detrimental effect on the child is sufficient proof to rebut the parental presumption, but the evidence must do more than raise mere suspicion or speculation of possible harm. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 166–67 (Tex. 1990) (holding that best interest of child is served by awarding custody to natural parent absent "evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child"); *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.—Dallas 2009, pet. denied) (discussing significant-impairment requirement and requiring evidence to do more than "raise a suspicion or speculation of possible harm"); *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (explaining that "link between the parent's conduct and harm to the child may not be based on evidence which merely raises a surmise or speculation of possible harm" and that "[t]here must be evidence to support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm"). Types of parental conduct that may constitute significant impairment include severe neglect, drug abuse, parental irresponsibility, bad judgment, and history of mental disorders. *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.). The "material time to consider is the present," and "evidence of past conduct may not, by itself, be sufficient to show present unfitness." *Id.*

The burden to rebut the parental presumption is by a preponderance of the evidence. *See* Tex. Fam. Code §§ 105.005 (generally requiring court's findings to be based on preponderance of evidence), 153.131(a), 153.191; *In re J.A.J.*, 243 S.W.3d at 616 (stating that "finding that appointment of a parent as managing conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-

8

evidence standard" (citing Tex. Fam. Code § 105.005; *Lewelling*, 796 S.W.2d at 167)). With these standards in mind, we turn to Mother's challenge to the trial court's conservatorship determination.

**Conservatorship Determination**

Mother argues that the evidence was insufficient to support the trial court's findings that appointing her as either possessory or managing conservator would not be in her children's best interest. Mother relies on the guardian ad litem's testimony that the children wanted to have contact with her, *see Holley*, 544 S.W.2d at 371–72 (listing child's desires among factors to consider in best-interest determination), and challenges the sufficiency of the evidence to support that her appointment as a conservator would significantly impair her children's physical health or emotional development. She argues that the Department did not overcome the parental presumption, that the only evidence of her "current situation and how it might be detrimental to the [c]hildren's physical health or emotional development" was the testimony at the September hearing, and that "[t]here was no testimony about any articulable concerns that showed or demonstrated that [she was] a danger to [t]he children" or evidence that she had abused or neglected her children or used illicit drugs around them.

The trial court, however, could have believed the caseworker's testimony and other evidence about Mother's conduct and the children's care and, based on this evidence, disbelieved Mother's excuses for not visiting with the children or completing services and her testimony that she had "scheduled everything" that the Department requested, that she was "getting the hang of everything," and that she would "do anything and everything" she had to do. *See In re J.J.J.R.,* 2021 Tex. LEXIS 446, at *11 (noting that "conservatorship determinations are

9

'intensely fact driven,'" quoting *Lenz*, 79 S.W.3d at 19, and that trial court is in best position to observe demeanor and personalities of witnesses); *In re J.J.G.*, 540 S.W.3d 44, 56 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (observing that trial court is in better position to decide custody cases because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent" (citing *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied))); *In re A.H.A.*, No. 14-12-00022-CV, 2012 Tex. App. LEXIS 3290, at *34–35 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.) (explaining that trial court acting as factfinder was entitled to reject parent's testimony and believe other witness's testimony); *see also Holley*, 544 S.W.2d at 372 (listing "any excuses for the acts or omissions of the parent" as factor to consider in best interest determination).

The caseworker testified at the de novo hearing that Mother had not demonstrated that she was able to provide her children with a safe, stable home. The Department became involved and removed the children because of concerns with Mother's methamphetamine use, Mother tested positive for methamphetamine, and during the pendency of the case, she missed around 20 drug tests. *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A factfinder reasonably could infer that [parent's] failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs."); *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (same). Other evidence also showed that Mother had only one visit with her children; did not maintain contact with the Department; did not provide support to her children; did not complete services, including the recommended inpatient "for her drug disorder"; and continued in a relationship with her girlfriend who had a history of drug use. *See In re S.T.*, 508 S.W.3d at 492 (listing drug

10

abuse, parental irresponsibility, bad judgment, and history of mental disorders among types of conduct that may constitute significant impairment).

The trial court could have credited this evidence of Mother's conduct, as well as her failure to appear for hearings including the de novo hearing, to find that the Department had rebutted the parental presumption, that appointing Mother as a managing conservator would significantly impair the children's physical health or emotional development, and that appointing her as a possessory conservator would endanger their welfare. *See* Tex. Fam. Code §§ 153.131(a), .191; *Lewelling*, 796 S.W.2d at 166–67; *In re S.T.*, 508 S.W.3d at 492; *see also R.H. v. D.H.*, No. 03-16-00442-CV, 2017 Tex. App. LEXIS 1743, at *11 (Tex. App.—Austin Mar. 2, 2017, pet. dism'd) (mem. op.) (explaining, in context of overcoming parental presumption, that "factfinder may infer the present fitness of the parent to be managing conservator from the parent's recent, deliberate past misconduct"); *In re D.S.B. & K.A.B.*, 2016 Tex. App. LEXIS 9111, at *13–15 (upholding trial court's placement of children with aunt and not appointing Father as managing or possessory conservator based on Father's conduct).

Concerning the children's desire to have contact with Mother, we observe that the trial court's order allows parent-child visits at Grandmother's discretion and, thus, does not deny contact between Mother and the children. *See In re J.J.R.S.*, 2021 Tex. LEXIS 446, at *16–17 (distinguishing between order that denies parental access to child and one that limits or restricts access and holding that trial court did not abuse discretion in ordering parent-child visitation solely at managing conservator's discretion). The caseworker testified that Grandmother was willing to supervise parent-child visits and to have a "normal relationship" with Mother and the guardian ad litem testified that she trusted Grandmother to make decisions on parent-child

11

visitation and that it was not in the children's best interest to have contact with Mother if she "is going to continue to kind of bounce in and out of rehab."

Mother also argues that it was not in the children's best interest for Grandmother to be the sole managing conservator because of Grandmother's relationship with her ex-husband. The trial court's order, however, enjoined unsupervised contact between Grandmother's ex-husband and the children, and the evidence showed that Grandmother was taking good care of the children. On this record, we conclude that the trial court had sufficient evidence on which to exercise its discretion and that it did not err in its application of that discretion in appointing Grandmother as the children's sole managing conservator and not appointing Mother as a managing or possessory conservator. *See Zeifman*, 212 S.W.3d at 587; *Echols*, 85 S.W.3d at 477. We overrule Mother's issue.

## CONCLUSION

Having overruled Mother's issue, we affirm the trial court's de novo order.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed:   July 8, 2021