

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00594-CV

**IN THE INTEREST OF T.L.K., JR.**, S.M.C., and S.B.C., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-01028
Honorable Lisa Jarrett, Judge Presiding

Opinion by:     Velia J. Meza, Justice

Sitting:         Lori I. Valenzuela, Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: February 11, 2026

AFFIRMED

Appellant J.C. (Father) appeals termination of his parental rights to two children, S.M.C. and S.B.C.[1] Following a bench trial, the trial court found that he endangered his children (subsections (D) & (E)), constructively abandoned them (subsection (N)), and violated the provisions of a court order that specifically established the actions necessary to obtain the return of the children (subsection (O)), and terminated his rights. *See* TEX. FAM. CODE § 161.001(b).

---

[1] The third child named in this case, T.L.K., is not Father's biological child and Father had no formal parental rights to him.

On appeal, Father contests the sufficiency of the evidence supporting the (N), (O), and best interest findings. Father does not challenge the (D) and (E) findings, thus we need only review the best interest finding. Because the evidence is sufficient, we affirm.

**BACKGROUND**

The Department became involved after receiving a report that Father lost consciousness outside a medical clinic on May 16, 2024. A three-year-old child—later identified as S.B.C.—was "running circles around" the Father while he lay on the ground. Father refused assistance from a security officer. Shortly afterward, Mother arrived with a nine-year-old and a four-year-old—later identified as T.L.K. and S.M.C.— and both parents again declined assistance before leaving the premises. The subsequent investigation revealed that the family was living in a makeshift tent behind the Pecan Golf Apartments, approximately half a mile into the wooded area. Investigators also learned that adults were using methamphetamine in the children's presence. Later, the parents were arrested for criminal trespass and drug-related offenses, prompting the children's placement with relatives under a safety plan which was followed by formal removal.

A two-day bench trial began on June 16, 2025. Only Father contested termination of his rights; Mother executed an affidavit of relinquishment prior to trial and T.L.K.'s father disclaimed any interest. The evidence showed Father was bonded to his children and consistently attended visits. The children, initially shaken and withdrawn, were thriving in their placements with relatives. The Department intended to seek adoption by the children's relatives based on ongoing concerns about homelessness, drug use, and domestic violence if they were returned to Father. Father acknowledged his criminal history, noncompliance with services, and incarceration, but emphasized his strong bond with the children, consistent visitation, and expressed tentative plans to secure housing, and employment upon release from jail.

The trial court ultimately signed a final judgment terminating Father's rights, from which he now appeals.

## DISCUSSION

Father challenges the legal and factual sufficiency of the evidence supporting the trial court's (N), (O), and best interest findings.

## 1 Standard of Review

A suit involving the potential termination of a parent's right to a child is of constitutional import. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (citations omitted). But a parent's rights "are not absolute." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

"[T]he quantum of proof required to support a termination decision differs from the level necessary to support a conservatorship appointment." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Specifically, termination requires a showing of clear and convincing evidence while the question of conservatorship is determined by the lower burden of preponderance of the evidence. *See* TEX. FAM. CODE §§ 161.001, 105.005; *see also Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). As a result, appellate review is more stringent for termination decisions than for those regarding conservatorship. *J.A.J.*, 243 S.W.3d at 616; *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024) (per curiam).

Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.

CODE § 101.007. This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

When reviewing the evidence in a parental termination case, we apply the well-established standards associated with both a legal and factual sufficiency review. In our legal sufficiency review, we "view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated its credibility, and dealt the closest with the evidence at hand." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 (Tex. 2021)) (internal quotation omitted). We will not substitute our own judgment for that of the factfinder. Instead, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). And, in terms of evidentiary weight and witness credibility, we will "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)) (internal quotation marks omitted). In our review, we "must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). While we will disregard all evidence contrary to a factfinder's determination if "a reasonable factfinder could have disbelieved or found it to have been incredible," we will not disregard undisputed evidence even if it does not support the trial court's finding. *Id.*; *C.E.,* 687 S.W.3d at 308.

In our factual sufficiency review, we consider the entire record and determine whether, considering the entire record, any disputed evidence "is so significant that a factfinder could not

reasonably have formed a firm belief or conviction" on the challenged finding. *J.F.C.*, 96 S.W.3d at 266.

## 2     Predicate Grounds

In his first issue, Father challenges the sufficiency of the evidence supporting the trial court's findings under subsections (N) and (O). "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). Father does not challenge the sufficiency of the evidence supporting the trial court's (D) and (E) findings, and therefore, concedes the sufficiency of the evidence supporting those grounds. Thus, it is unnecessary to review Father's challenge to the (N) and (O) findings to dispose of this appeal. *See* TEX. R. APP. P. 47.1. Father's first issue is overruled.

## 3     Best Interest

Father next argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the children's best interest. We disagree.

The best interest standard in this context has been thoroughly recited in prior opinions. *In re M.N.R.*, 719 S.W.3d 647, 657–58 (Tex. App.—San Antonio 2025, pet. denied) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). We begin our analysis by detailing evidence relevant to each *Holley* factor.

### 3.1.1   *Holley* Factors

**Desires of the Children.** The evidence showed that the children were bonded to Father. During visits, he would bring them coloring books and ensured they ate. The children showed

affection toward Father and told a caseworker they wanted Father to remain in their lives. Even though the children were young and subjected to a dangerous and unstable home environment, because the children directly communicated their desire that they wanted Father to remain in their lives this factor weighs strongly in Father's favor.

**Emotional and Physical Danger to the Children Now and in the Future.** Father's living situation was the primary source of the danger posed to his children. Prior to removal, he lived with Mother and the children in a makeshift tent in a wooded area behind an apartment complex. There was a mattress, children's clothes and toys spread all over the ground, and decorations hung in the trees. The mattress was described as "pretty dirty, almost black." A Department investigator noted that the temperature was around 100 degrees, and there was no way to keep cool. There were notes left on trees threatening "Joel" that "You cannot be here when no one else is here or you will have hands put on you."[2] When the investigator eventually found the family, the children appeared "very sweaty" and they looked like they hadn't bathed in days. The two girls were wearing clothes "a little too small" and one appeared to have a rash on her legs.

The children were ultimately removed after someone called the police to report that there were three adults and three children inside a defunct laundromat and the adults were "smoking methamphetamine." *See In re M.C.L.V.*, No. 04-21-00277-CV, 2022 WL 219002, at *6 (Tex. App.—San Antonio Jan. 26, 2022, no pet.) (mem. op.) ("A parent endangers her children by accepting the endangering conduct of other people."). Both parents were arrested and Father was found with drug paraphernalia on his person.

Throughout the case, Father never had a permanent residence. Department staff testified that Father allowed meth users around the children and that he had a history of domestic violence.

---

[2] The investigator's first name was Joel. Father later testified that the notes were not intended for the investigator but instead for a known thief in the area—who also happened to share the same first name.

No context or specifics were given regarding this "history" of domestic violence. Both Department witnesses merely alluded to Father's past. We conclude this testimony is conclusory and could not have reasonably assisted the factfinder in making its best interest determination. *Cf. In re A.C.P.*, No. 04-24-00653-CV, 2025 WL 900127, at *6, *8 (Tex. App.—San Antonio Mar. 25, 2025, pet. filed) (mem. op.) (holding statement that parent participated in "no services" with no context was conclusory while testimony regarding sexual abuse accusation by children was not conclusory).

Ultimately, this factor weighs strongly in favor of termination.

**Present and Future Physical and Emotional Needs.** The children were initially "pretty shaken up, timid, [and] withdrawn," but were later described as healthy and doing "fantastic" in school. S.M.C. exhibited behavioral problems which, according to the Department caseworker were a result of the removal "situation," and had been placed in a "therapeutic foster home" at the time of trial. S.M.C. was expected to be returned to her adoptive placement after six to nine months.

Father routinely visited with the children, when allowed, and interacted lovingly and appropriately. While the Department had complaints that Mother would tell the children they would be coming home, there were no complaints about Father's conduct during visits. The Department's chief concerns were Father's lack of compliance with drug testing, his unwillingness to accept help for his homelessness, and his continued criminal conduct. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (failure to appear for drug testing allows a reasonable inference parent is using drugs). We conclude the good (Father's appropriate behavior and the children's baseline healthiness) is counterbalanced by the bad (Father's noncompliance and criminal conduct). This factor is neutral.

**Parental Abilities, Programs Available, and Stability of the Home or Proposed Placement.** At the start of the case, Father lived in the woods with his family. During the case,

Father was arrested at least twice and remained in jail pending trial since May 2025. Father engaged in no services during the case. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("[F]ailure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."). At trial, Father was unemployed, incarcerated on drug possession charges, and had no home to return to. Due to Father's living conditions and lack of employment, he was clearly unable to provide basic food, shelter, and other necessities for the children if they were returned to him. These factors weigh in favor of termination.

**Plans for the Children.** Father testified that if he is released from jail, he plans to obtain identification documents, take parenting classes, submit to drug testing, and would either stay with his mother or stay at a motel. The Department, on the other hand, put forth a concrete plan of adoption by two relatives: Father's sister would adopt S.B.C. and S.M.C., while Mother's sister would adopt T.L.K. According to the caseworker, both aunts intended to maintain sibling contact and would be able to afford the children safety, stability, and normality. Father testified that he "completely trusts" his sister's ability to care for his children. This factor weighs in favor of termination.

### 3.1.2   Conclusion

We "must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. Father's problems centered around his homelessness, criminal behavior, and drug use. These behaviors subjected his children to instability and put them in physical jeopardy. While his parental rights were at risk, Father

continued a risky lifestyle and was arrested multiple times for drug offenses. *See In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at \*4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.) (mem. op.) (considering a parent's recent arrest as evidence the parent is unable to provide for the child's emotional and physical needs because it indicates instability, including the lack of a stable home). Father did not perform services, did not drug test, and could not parent the children for the foreseeable future due to his living situation and tenuous plans for the future. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) ("The need for permanence is the paramount consideration for the child's present and future physical and emotional needs.").

As future conduct may be inferred from past conduct, we conclude the trial court could have reasonably formed a firm belief or conviction that termination of his parental rights was in his children's best interest. *See In re E.A.R.*, 672 S.W.3d 716, 722 (Tex. App.—San Antonio 2023, pet denied). We similarly conclude that the disputed evidence is not so significant that the trial court could not have formed a firm belief or conviction that termination was in the children's best interest. *See J.F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally and factually sufficient to support the trial court's best interest finding. *See J.O.A.*, 283 S.W.3d at 344–45. We overrule Father's second issue.

## CONCLUSION

Having overruled each of Father's issues, we affirm.

Velia J. Meza, Justice